The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. Welcome to the Fourth Circuit and we'll hear our first case, United States v. Jackson. Ms. Albrow. Thank you, Your Honor. May it please the Court, I am here on behalf of the appellant, Jarvis Jackson. This is Mr. Jackson's second appeal in this case, which leads us to the reason we are here, which is an issue related to the mandate rule. And I'm sure the Court is aware of the background of the case, so I will just jump right in to where the issue arises, the difference between our position and the government's position. And that is that the mandate rule usually applies once this Court has made a decision, the District Court is required to make a dramatic change to the controlling legal authority. Mr. Jackson submits that there were two cases that were very critical to the decision in his case. The first one was Campbell, and that case held that attempted delivery is an inchoate offense that was part of West Virginia's distribution offense. It also held that the guideline 4B1.2, which defines controlled substance offense, does not include attempt as it was written at that time. There's one other case that was critical to the decision in Mr. Jackson's case, and that was a state court case. And as this Court knows, when interpreting crimes of violence, violent felonies, and other predicate offenses that enhance sentences, this Court is bound to look at the state court's definition of its offense. And in State v. Brown, the South Carolina Court of Appeals held that an attempted delivery is a distribution. Counsel, can I ask you a question? And sort of with all due respect to your position, which I do understand, how did we not already decide this issue in Davis? I mean, in Davis the defendant made the same argument. Campbell controls, and we have this state court decision, and in Davis we said no. For our purposes, at least, these are meaningfully distinct statutes. Right. There's no doubt it's the same statute involved, and it is... I think we referenced Jackson's decision in the Davis case. I believe it was in a footnote that it was unpublished, so it wasn't binding. So my best argument to you is that Davis is not controlling. For one thing, Davis was very careful to talk about attempted delivery. Now, I think previously attempted transfer is what got the Campbell Court to holding that attempted delivery was the least culpable conduct under the West Virginia statute. But if attempted delivery has been held, which it has in Campbell, to be an inchoate offense, then Davis really couldn't address this statute 44-53-375. I thought the distinguishing point between Campbell and everything else that's come after that is whether or not there's a separate state or federal statute that deals with attempts, which was not an issue in that first case. That is an issue that I think is probably the more problematic issue for Mr. Jackson. What I would say to that is that, first of all, it's wrongly decided. I know that this court can't do anything to rectify that, but I have to say that to preserve the record. But I would also say that there were other things... Davis is wrongly decided in that it holds that attempts are, if they are codified elsewhere, that they cannot be included in other parts of the statute. And I know I noted there's a case... that would also, under that theory, invalidate Groves. Groves, I think, is completely different than the state statute, simply because the sentencing commission didn't have any authority to not include 841 as a controlled substance offense. They were directed by Congress to do so. I believe that's noted in the Groves case. And for whatever reason, Groves does hold that an attempted transfer is not an attempted delivery. I say that Groves doesn't apply at all because there was that distinction made. I would say the state statutes are separate from that for those two reasons. May I ask you a question about... I'm just trying to get my hands around sort of the scope of the ruling that you're asking for. The mandate rule is not really important to your argument, right? You would make the exact same argument in a first sentencing, that here I am in federal district court, and I am just here to say that Davis doesn't control Campbell controls. So whatever we decide now will not only apply in cases where there's already a mandate, correct? Well, I think the easiest path for the court to decide is to hold that the mandate rule is in place because Jackson... But the bottom line holding, your way of sort of... My argument for why the dramatic change in law doesn't apply is Campbell controls over Davis. And if that is true, then that would also apply to anybody's initial sentencing, right? I think you can make a more limited holding that because Jackson used the controlling authority of Campbell, that's how the case was decided in Jackson. And they compared it directly... I'm sorry. They compared it directly to Campbell. So I would say Campbell controlled the decision in Jackson. In future cases... Jackson was groves out when Jackson was decided. I think it came later. Four days later, yes, your honor. And so I would say that if Campbell controlled in Jackson, going forward, other litigants are free to make their argument about Davis versus Campbell. But I think with this opinion coming out and relying directly on Campbell, that Campbell controls because to the extent that Davis would negate whatever holding in Campbell was applied in Jackson, it can't control because Campbell's a published opinion first in time. Right. And that is exactly the argument anybody would make in an initial sentencing. Campbell controls. It's first in time. Well, I did try to divide it in the briefing where I tried to address the mandate rule and why the mandate rule applied and then the additional argument of this is why Davis was wrongly decided. But to get back to Judge Agee's question about the attempt, there's another issue and it hasn't been addressed. But just to distinguish it for this court, I did not brief this, but I will say that 44-53-375 lists manufacture, distribute, and all of the substantive offenses. And then it adds or otherwise aids, abets, attempts, or conspires. And otherwise, according to Black's Law Dictionary, is kind of a catch-all phrase that means in other circumstances, in another manner. So I don't think that the attempt, the way it was defined in Davis applies to this statute because South Carolina has included all of the substantive offenses and then as a catch-all says, well, any other attempts or conspiracies or whatever that weren't covered in this first phrase are also not included. So I don't think South Carolina's intent was to exclusively use the second phrase for their attempt crimes. And I would also add that outside of the argument related to Campbell and Groves and Davis, that South Carolina actually has a case, Brown, that says an attempted delivery is a distribution. So outside of that analysis and outside of how the statutes might be interpreted compared to 841 or compared to the West Virginia statute, the state has held that an attempted delivery is in fact a distribution. And it's no different to analyze it under the categorical or modified categorical approach, how a state defines its law than it would be if it was another crime of violence or a violent felony. So that is, I mean, the bottom line is Mr. Jackson's position is that the mandate rule controls that Campbell and State v. Brown are the controlling authorities and they have not been abrogated since the original opinion came out in his case. Notwithstanding that reason, Mr. Jackson also raised an unreasonableness of the sentence argument and I think the record is clear that what he raised on his resentencing, which was post-sentencing conduct, including his clean record at the BOP and the fact that he had been doing programming at the BOP and he asked for a variance to what the guideline would be if the court held that Davis controlled was not addressed at all by the district court. The district court made a summary statement without further ado, I think Davis is right and here is the sentence and I believe that is an insufficient explanation and his sentence should be vacated and sent back for that reason as well. And if the court has no further questions, I'm almost out of time. Thank you. You've got some rebuttal time. Alright, Mr. Andrews. May it please the court. The mandate rule exists to ensure the orderly operation of the judicial system and to give meaning and effect to the decisions of appellate courts. It is not created to give loopholes or end runs around the binding decisions of the circuit. That's why a long-standing exception to the mandate rule exists when new authority undermines or rejects the principle legal reasoning behind the mandate. And that's exactly what happened here. If a criminal defendant were sentenced tomorrow under the same circumstances as Jackson, there can be little dispute as to what rule of law would apply to the calculation of his guidelines. And that would be United States v. Davis. That's because Davis is the only published decision of this circuit addressing the question of whether South Carolina's drug distribution statute includes incoherent attempt crimes. The panel in Davis found it did not and therefore that South Carolina distribution qualified as a controlled substance offense for the purpose of the guidelines. That is the law of the circuit. The rule that Jackson suggests upon this court, insofar as the application of the mandate rule goes, would freeze in time the state of the law in this circuit at the time that the prior panel opinion was issued in this case. And we would argue that goes directly against the policy that underlies the mandate rule, which again is to give meaning to the decisions of this court to reinforce the authority of appellate courts and ensure that district courts will follow the law. Now there's three primary problems with Jackson's argument on appeal. The first is Jackson's reading of Campbell is so broad as effectively to render Davis dead letter. Under Jackson's theory of Campbell, that analysis in that case, which of course dealt with a West Virginia statute, did not purport to apply to South Carolina law, renders nothing left of Davis, which of course is a published decision of this circuit and is binding law. Jackson also suggests that Campbell and Davis are irreconcilable and that this court needs to reconcile these two decisions. But Davis has already done that. This court doesn't have a duty to reconcile those cases. Davis explained that Campbell is limited to the West Virginia statute at issue in that case, and that the South Carolina statute at issue here, which is on all fours with Davis, is in fact a controlled substance offense under the guidelines. So Davis has already ruled upon that question. Third, Davis is one of three published decisions of this circuit that have now limited Campbell to the facts as were argued in that case relating to the West Virginia statute. Groves, of course, is one of those which dealt with the federal distribution statute, 841, but also Miller followed the same path as Groves and Davis in distinguishing the North Carolina drug distribution statute from the West Virginia statute at issue in Campbell. Under Jackson's reading of Campbell, it would apply to control virtually any statute that included the same definition of deliver, which includes those words attempted transfer. But as the court has now made clear in three published decisions, that of course can't be correct. Campbell is limited to West Virginia statute and the facts as they were argued and raised in that case. And so for those reasons, the district court did not err in applying this exception to the mandate rule in following Davis as the binding authority of this circuit and applying that rule to Jackson's guidelines in this case. Okay, Mr. Anderson, let me ask you about the procedural reasonableness argument. It looks like the record is pretty thin from your point of view, I mean in terms of defending the trial judge. Where is there a careful consideration in this record of the defendant's post-sentencing conduct while incarcerated? So your Honor, we would not disagree. Didn't he ask for a downward variance as well? He asked for a downward variance in the alternative. So the primary issue at sentencing, if you look at the record, it's clear that the central dispute here was the legal dispute about what guidelines applied. There was a request for an alternative variance. And I will concede, if we are wrong that Davis applies and the lower guideline range applies, I don't think there's enough here on record to justify an upward variance. But if we're right, and of course it is our position that Davis applies, and this is a typical guideline sentence, we believe that based on the entire context here, and of course this court has articulated a number of times that these questions are very context dependent. What the district court had before him was a substantial amount of briefing from both parties, not just on the legal question, but on the 3553A factors. He acknowledged that all the briefing was on the record, that the parties had put their respective positions out there, incorporated expressly that record as well as the prior sentencing, acknowledged the 3553A factors. So you're saying the judge doesn't have to articulate anything? Not exactly, Your Honor, but I do believe there is a foundation in the law of the circuit, and we would point specifically to Hernandez, which is a case with a very similar record here. And we certainly, we're not here to argue that it's a robust record. This is not a substantial record. Certainly the district court could have done more, but it is our position when viewed in the totality. The court, under our precedent, has to make an individualized explanation of, this is why I'm giving this sentence to this defendant, and here's how I've looked at the 3553A factors. And while all that may be kind of lurking in the record or the pre-sentence report, I don't see where the district court ever did any of those things. It certainly could have, but I'm not seeing where it did. It's not in the record. That's correct. We would urge upon the court, when looking at the context here, that it's clear that the district court did, in fact, consider the 3553A analysis put forth by the government, as well as the one put forth by the defendant, acknowledged that he had, in fact, evaluated the 3553A factors in arriving at a sentence. And it was a typical guideline sentence. I mean, this court has said, in prior opinions, Hernandez is one of them, that when issuing a typical guideline sentence, the court is, in part, relying on the judgment of the sentencing commission to, that a guideline sentence is the proper sentence under 3553A for the typical defendant. And so, when the court says, this is a typical guidelines case, makes reference to the arguments of the parties. I'm sorry, when the court says this is a typical guidelines case, so now you're referring to the first sentencing, right? Not this one? That's correct, Your Honor. And this one has additional information about post-sentencing conduct, so there's no way that that previous statement can be said to apply to the full evidence in front of the judge on resentencing, right? Well, Your Honor is correct that the judge did not reiterate that at the second sentencing, but the judge did expressly incorporate the record. Yeah, I'm not sure about how expressly it was incorporated, but even if it was, I guess, first of all, it couldn't possibly have accounted for the post-sentencing conduct. Second of all, he said it's a, just help me out there, in the first sentencing, it's a typical guidelines case, but also, if I'm wrong about the guidelines, I would vary by 50 months and come out the same way. Isn't there some tension between those two things? Either it's a typical guidelines case and it should be sentenced in the middle of the guidelines, or it's not, but how can both be true? I'll concede. I do think there is some tension there, and I'm not going to argue that there's not. And again, the record is not a model of clarity. Our position here is simply that it is not so unreasonable as to merit an abuse of discretion in this case. I'll say one final thing, and I understand the Court's skepticism about this record. There's no doubt that it's light. If this case is to go back again, we urge the Court to finally resolve the question that has occupied the parties and the Court each time Mr. Jackson has been sentenced, which is this question as to what guidelines are supposed to apply. Our position is that Davis is the set of law of this circuit on all fours with the statute at issue here, and the mandate that should go back to the District Court is to sentence in light of Davis. There's no further questions. Thank you very much. Thank you. All right, Ms. Albrow, you've got a little time here left. Thank you, Your Honors. I would point out, related to the reasonableness argument, that on pages 7 and 8 in the reply brief, Mr. Jackson points to the Pepper case and the Blue case. And Pepper is a Supreme Court case which specifically says post-sentencing conduct is likely the most accurate indicator of whether a person will engage in recidivism. So as Judge Harris pointed out, and as I pointed out in my brief, that wasn't addressed at all. No matter if this Court presumes that the Court did address all of the documents in front of it, all of the record, everything that was said at sentencing, it never said anything about Mr. Jackson's clean record at the BOP. It never said anything about all the programming he had done. And that's an important sentencing issue which should have been addressed. And I would also address the government's argument that Mr. Jackson has claimed Campbell is a very, very broad holding. And in fact, in some ways, it is a broad holding in that it held explicitly that attempted delivery is not included within the definition of controlled substance offense. So regardless of which statute you're applying, which state, federal, what have you, attempted delivery has been held to be an inchoate offense under the old version of the guidelines. And I do think there's one other issue that didn't happen but would be interesting. The government argued that all opinions, the reason for the mandate rule is for everyone to have certainty for there not to be But Mr. Jackson, he appealed once. He believed that the opinion that came out would apply in his case. And it was four months, I believe, until the Davis case came out. So if he had been resentenced within the time of Jackson coming out and Davis coming out, he would have received the benefit of his first appeal on that opinion. I don't know what the solution is to that. I just thought that that was an example of something that really shows how the mandate rule should work, how Mr. Jackson expected the benefit of his decision and he didn't get that. So unless the court has further questions, I have nothing more to add. Thank you very much. The court expresses its appreciation to both counsel for their arguments. And we'll come down and greet counsel and then move on to our next case.
judges: G. Steven Agee, Pamela A. Harris, Barbara Milano Keenan